Honors, my name is Tim Timmish. I represent the appellant and plaintiff, Holland D'Lil. This is a case that comes to the court following a judgment on the merits, a consent decree judgment. That's an important point because I believe this case presents primarily issues of law and how the court's jurisdiction arises and effectuates upon the issuance of a judgment. In this case, the plaintiff, it's an ADA barrier discrimination case involving construction history liability. In other words, the hotel performed certain construction at the hotel triggering the obligation to provide accessible guest rooms. In this case, the plaintiff, who went through three years of litigation, hotly contested, with two motions to dismiss and a motion for summary judgment. The motion for summary judgment being on the issue of her standing, who survived those motions and on the very day scheduled for trial, the very morning, succeeded in obtaining from defendants a consent decree that obligated the defendants to provide four new disabled accessible guest rooms and perform other structural alterations at the hotel and obligated the defendants to pay plaintiff statutory damages. In this case, despite achieving all that, despite a specific finding in the consent decree judgment that the court had subject matter jurisdiction, despite that, the district court, after the consent decree judgment became final and non-appealable, questioned whether it had subject matter jurisdiction. I must be missing something, but I don't understand what's wrong with that because all the way up to the U.S. Supreme Court, the court can question standing and it often has. That is true, Your Honor, when the facts supporting standing are impossible. For instance, the Supreme Court, in the two cases that have been cited in these proceedings, Matheson and Hayes, the facts supporting subject matter jurisdiction or diversity jurisdiction were impossible. There was no adverse... No, I'm talking about standing. I'm not talking about other stuff. I mean, there are two cases that come to mind immediately. One is the Inglis case and the other is Newdow, both of which went all the way through this court without a squeak and the U.S. Supreme Court looked at it and said, ah, plaintiffs don't have standing. I mean, it's done, you know, not all the time, but it's certainly done. So I just don't, I guess I don't get the connection you're making to the fact of when this all happened. It could have happened on appeal. All right. Your Honor, if I may, I'd like to distinguish the cases where the courts on appeal have gone back and looked at standing. As strange as that may seem, where it's escaped everybody's notice, that's limited to Here we have a consent decree judgment. And in the case, Jeff D., which is obvious... Well, that makes it even worse, because you can't agree to jurisdiction. So, I mean, I don't get that. I mean, that's just porn book stuff. You can't, the parties can't stipulate to waive or anything else jurisdiction. The courts can. I mean, the parties and the court can stipulate to waive the contest of adverse credibility determinations. In the case of Jeff D., which was authored by Justice, Judge Betty Fletcher, that's precisely what happened. The case went to consent judgment. There was enforcement of that judgment. And the defendant said, look, there's no standing. And the case of Jeff D. said, you've waived your constitutional objection. Well, yeah, but that case is quite different in that it was a question of enforcing the consent decree, which this is not, because the consent decree here doesn't provide for attorney's fees. And there, as I recall it, the court agreed to a provision that was, he didn't need to. It was more than required by the Constitution. Then he tried to wiggle out of it. And you say, no, no, no, no, no. I'm enforcing the consent decree. But there's no issue here of enforcing the consent decree. I believe there is. In paragraphs 11 and 12 of the consent decree, it is part of the decreed terms that the court will have jurisdiction to hear a motion for attorney's fees. I would submit to the court that it's impossible for a district court to have subject matter jurisdiction over a judgment and not have subject matter jurisdiction to hear attorney's fees. In fact, it may well not have had subject matter jurisdiction for the judgment. Now, that's a question we don't have before us. But the district court itself recognized that it woke up a bit late. But when it wakes up, it's kind of beside the point. Except it makes a bigger mess. But I mean. I would like the court to focus on what it woke up to, an adverse credibility determination. There was no question that this plaintiff had the facts to support standing, though they'd be contested. It was only a credibility question in the court's mind based on plaintiff's prior participation in past civil rights litigation. The point I would like to get to, I think that's entirely improper. But here's the thing. We have subject matter jurisdiction. It is agreed to insofar as defendants waive the contest of the credibility issues. That has to be the conclusion. Otherwise, the court would not have subject matter jurisdiction over that judgment. It's normal for a court in hearing attorney's fees after a judgment. That's distinguished settlements and other dispositions. After a judgment, to examine its jurisdiction, it's normal for it to say, my jurisdiction is part of my ancillary jurisdiction to decide attorney's fees following the judgment on the merits. It's ancillary jurisdiction. What facts that were agreed to previously do you believe the court questioned on credibility? Just this, Your Honor. My client was able to show sustained exposure and court in denying the motion for summary judgment and attacking her standing. But what facts did the district court attack that had been agreed to? Did the court say, I don't believe that she will come back to Santa Barbara? The district court said just this. The district court said that although she has exposure to Santa Barbara and the opportunity, it's not clear to us that she would choose that hotel. In other words, the district court... And where previously had there been facts agreed to by the other party that, or where had she testified that she would come back to the hotel? I apologize if the court was under the impression that there were agreed facts. I'm saying there's agreed facts by waiver at the time of entering the consent decree. You waive the adverse credibility determination. We have the complaint which sets forth her exposure and her desire to return and her frequent opportunity by visiting the area. We just had a case come down last Thursday or Friday. It's called Scaff versus Meridian, where nearly this identical issue was presented. In that case, the district court was presented with a settlement agreement disposing of an ADA case. The settlement agreement was incorporated into the judgment of dismissal. The district court retained jurisdiction. Thereafter, the plaintiff moves for attorney's fees. There's huge parallels to this case. The district court denied standing to hear the case based on the facts pled in the complaint. The per curiam decision in that case said no, the facts pled in the complaint are sufficient to support standing. Which brings me to my next point. Have you furnished that citation? I have not. I just got it this weekend. I would be glad to submit a letter to... Let's submit it to opposing counsel and to the court. We have some gum sheets if you can do that. I have one copy. Perhaps I can give that to defense counsel. The big difference is that that case involved a pleading question where you've got to assume all of the facts in favor of the allegations. Here you have an evidentiary hearing, which is precisely what should have happened when there is an issue about standing. As the court found here, you survived summary judgment, but that simply meant you were going to go to trial. There were triable issues. You had the hearing, and those issues were resolved. It's a very different procedural posture from SHAP or whatever the name of it is. The judge's comment raises a question, when is an evidentiary hearing appropriate? I would submit that in a case of a consent decree judgment, it's the least appropriate. Again, under Jeff D., we have a waiver of any contest of her adverse credibility. Certainly her facts, if believed, were sufficient for summary judgment. They waived the risk of litigation by signing that consent decree. It's hard enough to get defendants to sign these consent decrees. They don't want to do it. Our client succeeded on the day of trial in getting them to agree to the substantial alterations. I think she's deserving of the reward of having her attorney's fees compensated. I think at that stage of the litigation, we are looking for certainty. Ordinarily, just a regular matter of ancillary jurisdiction is triggered by the judgment on the merits, and the court need look no further. On appeal, cases have gone back and looked to the judgment. They've gone back. But there, the facts are impossible. It's not an adverse credibility that the facts are hanging on. In a gerrymandering case, the plaintiffs could not have succeeded because they lived outside the district. In a tax case, they failed to exhaust their administrative remedies. That's the Smith and Latch cases. In all of these cases cited by the district court as the justification for going forward with this evidentiary hearing, it was all based on impossible facts, not facts that were to be waived. Let me ask this question. You say in the settlement agreement, she was awarded statutory damages? Yes, Your Honor. So whether she was going to come back or not is irrelevant. Is that not the case in respect to statutory damages? And we argued that before the district court, that the standing at the attorney fee stage is the prevailing party's standard. Under Barrios, the decision of the Ninth Circuit, those fees entitled her to damages. Under Barrios, also, the injunctive relief she obtained. At that point, we're looking to the person's prevailing party. Now, if underneath it all, the jurisdiction, perhaps an appellate court would go back. Undo the whole consent decree and the attorney's fees. Nobody's suggesting that here. Nobody to this day, two years after this, whatever, a year and a half after this motion was filed, no one has suggested that that consent decree is false. Well, I just did. I suppose that's true, Your Honor. But before Her Honor reaches that stage, my client put in sworn evidence that she visited that area for a total of 35 days. 35 days. She brought two suits. 35 days. She has substantial exposure to the area. The only question they raise, and I'm not going to have time to get into the standing. I'd like to just rest on my brief on that. But the only question they raise is about the reasonable of her choice of that hotel if she were to go back after it's fixed. During the interim, while it's not fixed, she can't prove that she would go back because she would just be exposing herself to harm. So the district court in accepting, okay, you've got this exposure, but what about other hotels? Why don't you just go to other hotels? Why don't you explain the distance between this The district court pits the person's inability to return and make a spontaneous choice. Let's say an unreasonable choice. She just likes the hotel. She pits her in the middle. But she testified she liked the hotel. She testified she liked the hotel and what the advantages of the hotel were. As far as I could tell, the only thing the district court said was, but you didn't say you liked it as of the day you filed the suit. I believe, and I have paragraphs, it's paragraph 21 of the complaint specifically says that she would like to return and use the hotel on a spontaneous basis, but it is prevented from doing so by the barriers there. A allegation that was just accepted in the Skaff versus Meridian case is sufficient for standing. May I reserve? Yes, please. Good morning, Your Honor. James Link on behalf of the defendants, the Best Western and Sina Lodge, Cecilia Villanez, Jeanette Weber, and David Z. Weber, although actually he's deceased. Your Honors, what we have here is a case involving jurisdiction in which the plaintiff never presented any evidence to satisfy jurisdiction. Where at the original? At the evidentiary hearing. Or at the latest proceeding? At the evidentiary hearing, correct. And at that evidentiary hearing, and as a matter of fact, one could take issue with the allegation of the complaint as it was stated. At the evidentiary hearing, the court said, or after the evidentiary hearing, the court said, plaintiff was never even asked the question about whether or not there was standing for subject matter jurisdiction because the question is, as you pointed out, Your Honor, the question is, jurisdiction existing at the time of the filing of the complaint, was there an intent to return? There frankly was, that question was never ever asked. All that was asked was. Well, there was one place in the hearing where she tried to talk about the hotel and coming back, and the judge said, well, that's a particular hotel, that doesn't really matter. Your Honor, I don't think that was in relation to the specific issue of intent to return at the time of the filing of the complaint. That was never explored. There was never a question asked. There may have been other questions with respect to, for example, the Ramada Limited and some of the other hotels that she had been to, for example, the Fess Parker and some of the other ones in Santa Barbara, but as of the time of the filing of the complaint, there was never any question that was asked of Ms. DeLille. All of the questions were, what are your future plans? Well, as the courts have specifically established, future plans are not the issue, and a someday intention to return. Well, she did say that she went regularly to Santa Barbara, and she said that she liked the hotel and gave the reasons why she found it to be a good hotel. Yes, she did, Your Honor. And she hadn't been there since before she filed the complaint. That's correct. So that was obviously her feeling as of the time she filed the complaint. Well, Your Honor, that was never testified to. Well, her intent was never... Why is that a reasonable inference? Her testimony that, A, she had not been back to the hotel since she filed the complaint because they hadn't corrected the deficiencies, and that she found it a pleasant hotel and gave all the reasons why it would be an attractive place for her to come back. Well, Your Honor, at that point, if you then proceed to determine whether it was a reasonable inference, the judge did not draw that inference because the judge didn't find Ms. DeLille to be credible. One of the points that was made at the... But where did he say she's not credible? She was not credible, frankly, for the visit that she was there. She testified that she was trying to find an accessible... Did the judge say she's not credible? I'm sorry? Did the judge say, find her not credible? Yes, Your Honor, on a number of occasions in the ruling on the evidentiary hearing, found that she was not credible. Also, Your Honor, there's... In what respect? She was not credible with respect to her testimony regarding her plans to return. She said, for example, there was a plan to be back in Santa Barbara to do another investigation for an attorney on an ADA case. As it turns out, that was not true. She was, in fact, going to Carpinteria, which is not Santa Barbara. So that's just one example. There were other examples with respect to her credibility. Why were you having trouble finding an accessible hotel in December of 2001? She never really answered that question because there were a plethora of accessible hotels on a list that she was allegedly trying to make phone calls on. And when asked the question, she said she didn't have an answer as to why she was having trouble because, frankly, Your Honor, she wasn't having trouble. That was not credible testimony to the judge. Also, Your Honor, if there was a need to return, if there was a desire to return, why was the lawsuit filed a year later? Why was a preliminary injunction not pursued? Why wasn't this matter settled when it was settled twice and plaintiff backed out of those settlements? Your Honor, there's a tremendous amount of credibility issue involved that the judge found she was not credible with respect to even what amounts to the irrelevant plans to return. On that basis, she just had no specific intent that the judge was looking for to establish standing within the confines of Lujan and the Mulsky cases and some of the other ones at the district court level that have described standing. Even under Pickern, there was no evidence to establish standing. We have reviewed the Scaff case. The Scaff case was a pure pleading matter with no evidentiary hearing. We've also reviewed very thoroughly Your Honor's case of United States v. Ceja Prado, I believe is the pronunciation of the case. In that case, the court specifically said, even if this court determines that there's a question mark on standing, this court sends it back for an evidentiary hearing. Well, that's exactly what Judge Fisher did. She established an opinion on whether or not there was standing and she found no standing. In fact, at the pleading stage, or excuse me, at the summary judgment stage, the court said in the summary judgment ruling that but for the potential credibility issues in the declaration, she would have granted, I'm not saying that correctly, on the basis of the declarations, the judge said she had to deny the motion. However, the judge indicated there that credibility issues should be determined. And we're dealing with intent. Counsel, what do you do with the fact that statutory damages were awarded? Certainly there was jurisdiction for that. The statutory damages were agreed to, Your Honor, in the consent decree under state law. But that is clear there was jurisdiction to grant damages for her stay in the hotel. Well, Your Honor, that would have been supplemental jurisdiction existing on whether, if there was in fact original jurisdiction under the ADA, well, under Title III of the Constitution, if there was original jurisdiction, yes, the consent decree would have jurisdiction. That was Your Honor's point in Jeff D. In Jeff D., there was original jurisdiction 20 years ago for the district court. And that 20 years' worth of consent decree enforcement, of course the court had jurisdiction to enforce it. But it originally had jurisdiction. In this circumstance, the court didn't have original federal jurisdiction. If there's no federal jurisdiction, there's certainly no subject matter or there's certainly no supplemental jurisdiction. I'm not quite following you because the statutory damages are federal. No, Your Honor. No, Your Honor, the statutory damages, there is no damage under the ADA. The ADA is purely injunctive relief. The only statutory damages... But let's say that they are state damages and statutory state damages. Yes, Your Honor. There's jurisdiction for that. Well, there's jurisdiction, Your Honor, for supplemental jurisdiction if there's original federal jurisdiction. If there's no original federal jurisdiction, there's no supplemental state jurisdiction. That's the point of what took place with respect to the evidentiary hearing, was to determine whether or not there was, in fact, federal jurisdiction. And without it, there's no supplemental jurisdiction. One of the points that was made earlier was whether or not the consent decree would be enforced by the federal court. Case authority states that if there is an independent basis for jurisdiction under the consent decree, that it can be enforced. But it also says that a consent decree where the parties have agreed and it's concluded, or if perhaps there's things like an injunctive relief still pending, that might be enforced in the state courts. That consent decree is a contract that could be enforced in an action in state court. I can tell Your Honors that that's not a problem here because the three rooms, by the way, it was three rooms, not four rooms under the consent decree, those three rooms and the other work have been completed. So we're really, at this point, talking about solely an attorney fee question, not whether or not the federal district court may someday end up with jurisdiction. There simply never was any jurisdiction. And again, I want to echo the point and stress the point, we did not stipulate to any facts at all with respect to jurisdiction, with respect to Ms. DeLille's intent to return. That was obviously the key point. And again, I want to stress the point that Ms. DeLille never exactly testified with respect to her intent to return at the time of the filing of the complaint. And if it can be inferred, then that inference was not drawn by the trial judge, and rightly so because of the lack of credibility. The facts supporting standing are impossible. That was the case that were cited to this court. In the United States versus Seha Prado case, the plaintiff testified, excuse me, the defendant testified that he had used his brother's ID. Now, that question was whether or not, it was simply a factual question, whether or not he used his ID. If he didn't use his ID, then he was, in fact, not a minor and could be charged with a felony. This is not an issue of impossibility. I thought that the district judge based her ruling on the fact that there was no testimony that at the time of, that she filed a complaint, that she intended to come back, rather than that he found her testimony not credible. Your Honor, the judge went two directions. The judge said there was no testimony with respect to intent to return at the time of the filing of the complaint, and then also proceeded to then go through the various Molsky factors, which involve things like proximity, intent to return, have they been there before, those sorts of factors, and found that Ms. DeLille was not credible. That's the second part of the opinion.  I'm going to go forward with that to describe my findings with respect to that lack of credibility. She says it's lack of credibility, and frankly, she says it's not lack of credibility because of the numbers of cases that Ms. DeLille has filed. She said there was lack of credibility, quite frankly, because of the inconsistencies in the testimony. So it was a two-part opinion on the part of District Judge Fisher in dealing with those issues. Your Honor, one point that I want to make, and it's perhaps not altogether relevant, but Mr. Timmish argued that there were issues of building and construction that triggered requirements for alteration of this hotel. That was his argument. That was the difficulty of this litigation, and we stated it in the brief. For example, Mr. Timmish argued that when you retile a bathroom under the ADA and under the guidelines for the ADA, you have to complete a complete path of travel to that bathroom, even though all you've done is simple maintenance and made no alterations. This form of litigation is very difficult to deal with because of some of these matters that are vague, perhaps not fully litigated, and of course there's a difficulty in litigation, especially considering the attorney fee award. The SCAF case, as we've already gone over, doesn't really affect this case, and as a matter of fact, if anything, it supports it. It supports it because this Court recognized, obviously a different panel, that in order to have jurisdiction to award attorney's fees, you must have subject matter jurisdiction of the action, and while the Court there found that there was, in fact, subject matter jurisdiction, it is solely on the pleadings. Unless the Court has any other questions, I think we've addressed all the issues in this matter. Your Honor, one of the issues raised was this concept of race judicata. Again, the plaintiff did survive summary judgment. If we took the plaintiff's declarations on summary judgment at their face value, she presented a prima facie case that she intended to return, that she had opportunity and exposure in the area to return. If the defendant wants to stipulate to subject matter's jurisdiction, and this isn't just a stipulation, this is a court order finding subject matter's jurisdiction, we went beyond it. This occurred one month before the summary judgment hearing. It can't have it both ways. It can't avoid the risks of litigation, waive those adverse credibility contentions against plaintiff's intentions, reduce its risks, and then later, when facing an attorney fee motion, ask to have a second bite at the apple. Again, attorney's fees is a matter of ancillary jurisdiction. It looks only to see if there is an underlying judgment. Here, the judgment was long final. It had been non-appealable. It was months past its appeal stage. Plaintiff did, in fact, testify to her exposure. If the court looks at the Carpenter City case, or Carson, the court does not look to see if there's firm plans on file to return to an attorney filing the complaint. It only looks to the travel pattern and exposure to the area. The plaintiff here testified that she averaged visits to the area one to two times per year, and that she visited in July 2002, not long after the complaint, her friends in the area. Her sworn declaration attesting to her 35 days' visits to the area was submitted into evidence. There was more than enough evidence to sustain that she visited there. But this whole evidentiary hearing, how was it justified when we already had subject matter jurisdiction? When under Jeff D, the issue was whether the court ever had jurisdiction because the plaintiff had not proved a future visit. And the court says, that's too late. You can be held to agree to more than you're constitutionally required. And so that is an exception to the Supreme Court cases that say that you can't waive or stipulate to jurisdiction. You can waive and stipulate to the contest of the facts forming jurisdiction, especially on credibility. That's all I have, Your Honor. Thank you, Kevin. Thank you. Case to be submitted. The court will stand in recess for the day. Thank you. Thank you.
judges: Fletcher, Reinhardt, Rymer